**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:25-CV-15-JHM**

**CALVIN RAY MARRUQUIN** **PLAINTIFF**

**v.**

**HENDERSON COUNTY DETENTION CENTER, *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the renewed motion for summary judgment filed by Defendant Justin Whitaker. (DN 31). Plaintiff Calvin Ray Marruquin filed a response to the motion. (DN 34). For the following reasons, the motion for summary judgment will be granted.

**I**.

In the verified complaint (DN 1), Plaintiff alleges that after being arrested and booked into Henderson County Detention Center (HCDC), Defendant Whitaker, an HCDC deputy, "performed a normal pat-down to make sure I wasn't in possession of any contraband." (*Id*, PageID.4). Plaintiff states that Defendant escorted him to an area for a "low-dose body scan," which Plaintiff "cleared with negative results." (*Id.*). Plaintiff claims that Defendant then brought him to a cell where a strip search was conducted for "unreasonable reasons." He avers the strip search was unnecessary since the body scan had shown that he did not have contraband anywhere in his body and that the "body scan is an alternative to an unclothed search." (*Id*, PageID.4-5).

In the verified amended complaint (DN 15), Plaintiff alleges that his rights were further violated when Defendant Whitaker forcibly retrieved a bag from his rectum "without any medical assistance, without lubricant or in a sanitary environment" causing severe pain and rectal bleeding. (*Id.*, PageID.52-53).

On initial review of the complaints, the Court allowed Plaintiff's Fourth Amendment claims based upon the initial visual strip search and subsequent physical cavity search to proceed against Defendant in his individual capacity. (DNs 6, 16).

Following discovery, Defendant filed a motion for summary judgment (DN 23), which the Court granted in part, dismissing Plaintiff's claim that the visual strip search violated the Fourth Amendment. (DN 29). The Court denied the remainder of Defendant's motion with leave to file a renewed motion for summary judgment to address Plaintiff's claim that Defendant performed an invasive body cavity search in violation of the Fourth Amendment. (*Id.*).

**II.**

Defendant now moves for summary judgment on the remaining Fourth Amendment claim, asserting his entitlement to qualified immunity. Specifically, he avers that Plaintiff's unsubstantiated allegation cannot create a genuine issue of fact sufficient to defeat summary judgment; that the search was not unconstitutional; and that Plaintiff fails to present any law putting Defendant on notice that his conduct violated a clearly established constitutional right. (DN 31, PageID.153-59).

In support of his motion, Defendant submits as evidence his second sworn affidavit, Plaintiff's grievance history from HCDC, and a methamphetamine medical study abstract. (DN 31-1 through DN 31-3; redacted exhibit at DN 33). Defendant also incorporates by reference the exhibits appended to the first motion for summary judgment, which contain: Plaintiff's arrest reports dated October 22, 2024; HCDC Incident Report dated October 22, 2024, with a photograph of the bag recovered from Plaintiff's search; Defendant's first sworn affidavit; HCDC Notice of Disciplinary Hearing and Results dated October 24, 2024; and the state court docket for Plaintiff's criminal action. (DN 22-1 through DN 22-6; redacted exhibits at DN 25-1 through DN 25-3).

Plaintiff has responded to the motion, in which he argues that Defendant did not allow him to "pass the bag naturally or try to secure a warrant, or even attempt to summons for medical . . . assistance." (DN 34, PageID.386). He further states that the removal "could of caused serious injury or even death. Luckily it was a little blood that stopped over time. The bag shows fecal matter and blood d[ue] to the removal by the defendant." (*Id.*). Plaintiff argues that "when the search goes beyond the surface a warrant is required to manually forcibly remove a bag" from a person's body cavity. (*Id.*, PageID.387). He maintains the evidence of record establishes that Defendant removed the bag from his body in the manner alleged in the amended complaint. (*Id.*). Plaintiff previously submitted evidence shortly after the close of discovery, consisting of Defendant's response to request for admissions and answers to interrogatories; HCDC Rules, Policies, Procedures and Inmate Rights Pertaining to Confinement; HCDC Incident Report dated October 22, 2024; and a photograph of the bag recovered from Plaintiff's search. (DN 21-2 through DN 21-8). The Court also considers these exhibits in conjunction with Plaintiff's opposition to summary judgment.

**III.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require lenient treatment of substantive law, . . . and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

## IV.

### A. Factual Record

The following facts are drawn from the parties' submissions and are undisputed except where noted.

On October 22, 2024, police found Plaintiff sleeping in the driver's seat of his vehicle. Plaintiff consented to a search of his vehicle which produced medication not prescribed to Plaintiff, $6,255.00 in cash, two written ledgers containing names and amounts, and a bag containing

methamphetamine residue. Plaintiff was arrested for methamphetamine possession, paraphernalia possession, and illegal possession of a drug ledger and was taken to HCDC. (DN 25-1).

In his first affidavit, Defendant attests that when a detainee is brought to HCDC on a felony drug charge, HCDC policy requires the intake officer to "search the detainee with a clothed pat down, electronic body scan, and a strip search." (DN 22-3, PageID.115). He explains, "a clothed pat down does not always detect well-hidden contraband, and the body scanner does not always detect drugs or other non-metal contraband. Therefore, a strip search is required." (*Id.*).

Defendant attests that upon Plaintiff's arrival at HCDC, Defendant patted Plaintiff down and placed him through HCDC's body scanner. Neither of these searches revealed contraband. Defendant then strip-searched Plaintiff in a private room with no other inmates or jail staff present. In the private room, Defendant ordered Plaintiff to undress until completely naked and raise his arms and genitals, which Plaintiff did. Defendant then asked Plaintiff to spread his buttocks and cough, but Plaintiff refused three times. After Defendant asked Plaintiff a fourth time, Plaintiff complied, and Defendant observed a plastic baggie protruding from Plaintiff's anus. (*Id.*).

According to Defendant, he "ordered [Plaintiff] to remove the baggie from his anus and hand it to me, which he did. At no point did I insert my fingers into his anus or otherwise touch his genitals/sexual area." (*Id.*, PageID.116). The bag contained a crystal-like substance. Believing the substance to be methamphetamine, Defendant and his supervisor secured it in an evidence bag and turned it over to the Henderson Police Department. (*Id.*).

Defendant's second affidavit further explains, "Once [Plaintiff] coughed and the baggie protruded from his anus, it was clear to me that he was concealing contraband, most likely drugs but possibly a knife or some other dangerous instrument." (DN 31-1, PageID.162). He continues,

"Because a bag of drugs hidden inside a person's body can tear open at any moment and kill the person, it was critical that the baggie be removed immediately." (*Id.*). Defendant repeats that he ordered Plaintiff to "remove the baggie of meth from his anus and hand it to me, which he did. At no point did I insert my fingers into his anus or otherwise touch his genitals/sexual area." He attests that "Plaintiff did not appear injured after he removed the baggie from his anus," and that "Plaintiff never filed any grievance or medical request alleging any sort of injury from the search, nor to my knowledge did he ever informally complain about suffering any sort of injury." (*Id.*).

Plaintiff's verified amended complaint presents a different version of events. Therein, he alleges that he was ordered to "squat and cough," and after the third attempt,

> [Defendant] ordered me to bend at the waist and spread my cheeks . . . . He then asked "what is that" and before I could say anything he "retrieved" a plastic bag from my rectum. Despite the fact that Deputy Whitaker didn't know how large the object was that was protruding from my rectum or how far it extended into my body and despite him having any medical training, attempt to get a warrant, request medical, or just allow me to move it naturally. He forcibly "retrieved" the bag with his fingers without any medical assistance, without lubricant or in a sanitary environment. Causing me severe pain and causing my rectum to bleed.

(DN 15, PageID.52). Thus, a factual dispute exists as to whether Plaintiff removed the bag himself or whether Defendant inserted his fingers into Plaintiff's body to remove the bag.

As a result of the evidence found during the search, Plaintiff was charged with promoting contraband, first degree, and trafficking in a controlled substance (methamphetamine), first degree. (DN 25-4). Plaintiff was found guilty of these charges on June 17, 2025, and sentenced to eight years of imprisonment. (DN 25-6). Plaintiff was also charged with and found guilty of possessing unauthorized drugs in violation of HCDC policy and was sentenced to 60 days in segregation. (DN 22-5).

**B. Defendant's Motion**

Defendant seeks summary judgment on Plaintiff's Fourth Amendment claim against him on the basis of qualified immunity. (DN 31, PageID.153-160).

Qualified immunity shields government officials from civil damages liability for violations of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit follows a two-step inquiry in reviewing a claim for qualified immunity: "(1) whether the plaintiff has asserted a violation of a known [ ] constitutional right; and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 745 (6th Cir. 2006) (internal quotation marks omitted; alteration in original). District courts and courts of appeals have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

***1. Violation of Constitutional Right***

Defendant's motion focuses on the first prong, arguing that the cavity search was not unconstitutional, *i.e.*, that the search was reasonable under the Fourth Amendment.

"The Fourth Amendment does not prohibit the search of a [detainee's] person, so long as the search is reasonable in scope, manner, and location; is reasonably related to a valid penological goal; and is not performed for a wrongful purpose, such as to humiliate or degrade . . . ." *Lapriest v. Shartle*, No. 4:10 CV 2385, 2011 WL 841262, at *1 (N.D. Ohio Mar. 7, 2011) (citing *Bell v. Wolfish*, 441 U.S. 520, 558–59 (1970)). Thus, courts evaluating the reasonableness of a search under the Fourth Amendment are required to consider "the scope of the particular intrusion, the

manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" in balancing the need for the search against the invasion of personal rights that the search entails. *Bell*, 441 U.S. at 559; *accord Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) ("[W]e first examine the scope, manner, and location of the search—as well as the justification for initiating it—in order to assess the degree to which it invaded the prisoner's right to privacy. We next evaluate the need for the search, giving due deference to the correctional officer's exercise of her discretionary functions. Finally, we determine whether the search was reasonably related to legitimate penological interests by weighing the need against the invasion.") (citation omitted).

The Supreme Court has recognized that detainees may be subjected to strip searches and visual cavity searches without individualized suspicion. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333-34 (2012). Manual body cavity searches,[1] though invasive, are not *per se* unreasonable. *See, e.g.*, *Daughtery v. Harris*, 476 F.2d 292, 294 (10th Cir. 1973) (a prison "policy of allowing rectal searches must be considered reasonable unless contradicted by a showing of wanton conduct"); *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 43 (1st Cir. 2009) (while "[t]here is no doubt that digital rectal examinations entail an intrusion greater than the severe if not gross interference with a person's privacy that occurs when guards conduct a visual inspection of body cavities," such examinations "are at times a necessary and reasonable concomitance of . . . imprisonment") (internal quotations and citations omitted). While *Bell* and *Florence* involved

[1] The Sixth Circuit has noted the distinction between the types of searches:

> The term "strip search" generally refers to an inspection of a naked individual without scrutinizing the subject's body cavities. The term "visual body cavity search" refers to a visual inspection of a naked individual that includes the anal and genital areas. The term "manual body cavity search" refers to an inspection of a naked individual with some degree of touching or probing the body cavities . . . .

*Daugherty v. Campbell*, 935 F.2d 780, 781, n.1 (6th Cir. 1991) (citing *Blackburn v. Snow*, 771 F.2d 556, 561 & n.3 (1st Cir. 1985)).

visual cavity searches, the "*Wolfish* framework . . . still guides the inquiry" as to non-surgical cavity searches. *Sanchez*, 590 F.3d at 43; *accord Boyd v. Plainfield Police Div*., No. CV 15-2210 (SRC), 2019 WL 2385887, at *9 n.7 (D.N.J. June 6, 2019) (noting that, while *Bell* and *Florence* did not involve physical touching, they "nevertheless inform the Court's qualified immunity analysis as they bear on the contours as to the scope of permissible body searches of detainees for contraband.").

Defendant argues that the search in question was reasonable because it was evident that contraband was being concealed and that Plaintiff was not injured as a result of the search. (DN 31, PageID.156-57).[2] He further contends that Plaintiff was searched in a private room, by an officer of the same sex, and without force. (*Id*., PageID.157). Finally, Defendant argues that the search was necessary for the health and safety of Plaintiff and other HCDC inmates. (*Id*., PageID.158).[3] As support, Defendant points to the evidence of record showing that Plaintiff did not file a medical request or grievance pertaining to the search or any purported injury resulting therefrom despite his voluminous grievance history. (DN 33 [grievance history, redacted]). Defendant also references the photograph of the bag, which he asserts depicts no blood. (DN 22-2 [photograph]).

Plaintiff does not dispute that the bag containing contraband was protruding from his rectal cavity following the "squat and cough" visual cavity search and does not dispute the absence of a

---

[2] In addition to *Bell* and *Florence*, *supra*, Defendant cites to the dissenting opinion in *Booker v. LaPaglia*, 617 F. App'x 520, 529-30 (6th Cir. 2015), which proposed a qualified immunity analysis not undertaken by the majority and concluded that it was clearly established law in 2010 that penological concerns did not justify anesthetizing, paralyzing, and intubating the plaintiff in order to uncover narcotics from his rectum. While the facts of *LaPaglia* are materially different insofar as that case involved a forced surgical procedure, the Court addresses its guidance under the second prong of qualified immunity.

[3] Although Defendant maintains that a manual cavity search did not take place, the Court assumes Plaintiff's version of events to be true for purposes of the instant motion and thus addresses the search at issue in this context.

significant injury. He responds that "Defendant is not a medical examiner and could of caused serious injury or even death. Luckily it was a little blood that stopped over time." (DN 34, PageID.386). He maintains the photographic evidence of the recovered bag "shows fecal matter and blood." (*Id.*). The photograph of the bag—relied upon as evidence by both parties—is of insufficient resolution to depict the presence or absence of blood or any other bodily fluid on the bag. (DN 22-2).

Plaintiff also alleges that the search was not conducted in a "sanitary environment." (DN 15, PageID.52). However, he cites to no record evidence, nor does he provide a description of facts that can be established by admissible evidence to support this characterization. *See Reedy v. West*, 988 F.3d 907, 913 (6th Cir. 2021) (assertions in verified complaint were "conclusory statements unadorned by any supporting facts" and plaintiff failed to adduce competent evidence "containing some further factual enhancement" sufficient to defeat summary judgment); *accord Perkins v. Washburn,* No. 3:19-CV-00959, 2022 WL 706958, at *6 (M.D. Tenn. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 706927 (M.D. Tenn. Mar. 8, 2022) (allegation in verified complaint that the defendant failed to intervene in a fight, standing alone, was insufficient to create a genuine issue of fact and explaining, "[a]lthough this statement is made from personal knowledge and may be considered," the plaintiff "offer[ed] nothing more to support it or to elaborate upon its minimal assertions at summary judgment" and thus could not provide "'concrete evidence from which a reasonable juror could return a verdict in his favor'") (quoting *Anderson*, 477 U.S. at 256).

Even taking Plaintiff's assertions as true that Defendant "penetrated [Plaintiff's] rectum with his fingers" without lubricant or medical assistance to remove the bag (DN 15, PageID.53), the Court finds that the search was not unreasonable in scope, manner, and location, and that the

search was undertaken pursuant to the legitimate penological objective of detecting or deterring contraband.

a. Scope, Manner, Location

Plaintiff's assertions in the verified complaint indicate that once the bag was visibly protruding from his anal cavity, Defendant's alleged penetrative contact to effectuate removal of the bag was momentary. (DN 15, PageID.52). Thus, any physical intrusion was brief in duration and incidental to a legitimate cavity search. *See Maxwell v. Almanza*, No. 21-11239, 2023 WL 6172020, at *4 (5th Cir. Sept. 22, 2023) (manual cavity search was not unreasonable where it lasted only two to three seconds, was performed in the privacy of plaintiff's cell, was not conducted in a humiliating and degrading manner, and was conducted "incident to a legitimate body cavity search"); *see also Johnson v. Robinette*, 105 F.4th 99, 118 (4th Cir. 2024) (to survive summary judgment, plaintiff must "present sufficient testimony or other evidence upon which a reasonable jury could find that [officer's] momentary and incidental touching . . . to remove the suspected contraband rose to the level of a sexually abusive search under PREA or a constitutionally unreasonable one under the Fourth Amendment").

Plaintiff does not allege any non-conclusory facts indicating that the bag was forcefully removed from his body or that any other use of force was employed. Nor does he demonstrate that he sustained an injury, despite his allegations of pain and slight bleeding. As observed by Defendant, there is no evidence that Plaintiff complained of pain or symptoms or sought medical treatment following the search. *See Golden v. Myers*, No. 118CV03496JMSMJD, 2021 WL 981321, at *4 (S.D. Ind. Mar. 16, 2021) (plaintiff's testimony that officer "reached around the rim of [his] anus and probed" while searching for potential contraband was not unreasonable where it was "not done to humiliate" or to "gratify the defendant's sexual needs,"

there was no evidence of harmful intent, and plaintiff did not suffer an injury); *Lule v. Aguilar*, No. ED CV 21-2057-JWH(E), 2023 WL 6813721, at *5-6 (C.D. Cal. Feb. 8, 2023) (plaintiff failed to plead a cognizable Fourth Amendment claim based on rectal cavity search where he "alleged no facts showing that the search itself threatened his safety or health" and, "[a]lthough Plaintiff generally alleges that the search was painful and humiliating, he alleges no facts showing that the search was accomplished by excessive force."); *cf. Alexander v. Connor*, 105 F.4th 174, 180-81 (4th Cir. 2024) (genuine dispute of material fact precluded summary judgment where prisoner's declaration described acts by defendants included pepper spraying him, slamming him to the ground, grabbing him by his hair, and screaming expletives in his face before violently pulling a contraband phone out of his rectum in prison shower). Additionally, there are no allegations of degrading, harassing, or unprofessional conduct by Defendant. *See Maxwell*, 2023 WL 6172020, at *4; *see generally Sumpter v. Wayne Cnty*., 868 F.3d 473, 483 (6th Cir. 2017) (humiliating comments, "while not dispositive of reasonableness, 'implicate the dignitary interest inherent in the privacy component of the Fourth Amendment's proscription against unreasonable searches.'") (quoting *Stoudemire*, 705 F.3d at 573) (internal quotation marks omitted).

Finally, it is undisputed that the search was conducted in a private room by a single male officer. *See Suber v. Khune*, No. 2:25-CV-391, 2026 WL 2130645, at *5 (S.D. Ohio July 24, 2026) (invasive strip search yielding no contraband conducted privately by guard of same sex for the purpose of detecting or deterring contraband weighed in favor of a constitutionally permissible search); *see generally Williams v. City of Cleveland*, 771 F.3d 945, 953 (6th Cir. 2014) ("We have already observed that "a strip search is more invasive when it is performed where other people can see the person being stripped.") (citing *Stoudemire*, 705 F.3d at 573).

The search as alleged by Plaintiff, while undoubtedly invasive, was nonetheless reasonable in scope, manner, and location. And the record reveals no other circumstances that would exacerbate the dignitary intrusion here, where the search was brief, conducted by a single officer in a private room without any additional force, restraint, or harassing conduct, and pursuant to a legitimate penological objective, as discussed below.

b. Justification

Defendant correctly observes that the controlling case law makes clear that the removal of contraband is a legitimate penological objective. (DN 31, PageID.157-58). "Unquestionably, 'detect[ing] and deter[ing] the possession of contraband' is a legitimate penological objective." *Stoudemire*, 705 F.3d at 573 (quoting *Florence*, 566 U.S. at 328); *see also, e.g.*, *Sanchez*, 590 F.3d at 43 (explaining that "locating and removing contraband from the prison system" is a "legitimate penological objective"); *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017) ("Controlling the flow of contraband and ensuring institutional security are legitimate penological objectives."); *Green v. Hallam*, 105 F. App'x 858, 862 (7th Cir. 2004) ("Preventing drugs and weapons that can be smuggled through the alimentary canal or hidden in the rectal cavity is a legitimate penological concern . . . . Digital rectal searches are a legitimate means of maintaining order and do not violate the [Constitution] as long as they are conducted in a reasonable manner."); *Alexander*, 105 F.4th at 180 ("To be sure . . . the asserted justification for the search—favors the officers. The presence of contraband in prisons is 'one of the most perplexing problems of prisons today' and prison officials always 'must be . . . alert to' it.") (quoting *Hudson v. Palmer*, 468 U.S. 517, 527 (1984)).

It is undisputed that the bag of contraband was readily apparent after being produced by a permissible "squat and cough" examination of Plaintiff, who was booked into HCDC upon

narcotics charges. *See Brown v. Polk Cnty., Wis*., 965 F.3d 534., 965 F.3d 534 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1304 (2021) (holding that jail officials could lawfully conduct a physically penetrative cavity search of a pretrial detainee as long as there was reasonable suspicion to believe that she was hiding contraband inside her body); *accord Solomon v. Sobek*, No. 18-CV-1922-PP, 2020 WL 1492913, at *9 (E.D. Wis. Mar. 27, 2020) ("Given the Supreme Court's holding in *Florence* that no reasonable suspicion is needed for visual body cavity searches of pretrial detainees, where there is strong suspicion (indeed, at one point, proof) of potentially dangerous contraband in a detainee's body cavity, a brief, albeit highly intrusive, tactile search of that cavity conducted in private by jail staff is not unconstitutional.").

Defendant further avers that it was critical for the bag to be removed from Plaintiff's body immediately due to the risk of rupture, which could result overdose or death. (DN 31, PageID.158). It is undisputed that the bag removed from Plaintiff's body contained eight grams (or 8,000 milligrams) of methamphetamine, where 200 milligrams has been reported as a lethal dose. (*Id*.; see also DN 31-1 [medical study abstract]). Removal of the bag for the purpose of reducing the risk of methamphetamine toxicity to Plaintiff also weighs in favor of reasonableness of the search. *See generally*, *Jones v. McLerran*, No. 2:20-CV-00009, 2022 WL 849652, at *16 (M.D. Tenn. Feb. 28, 2022), *report and recommendation adopted*, No. 2:20-CV-00009, 2022 WL 842857 (M.D. Tenn. Mar. 21, 2022) (physician's affidavit explaining necessity of digital rectal exam to remove bag containing several grams of methamphetamine and discussing risks of "body packing"); *see also Jensen v. Allen*, No. 4:19-CV-00039-DCN, 2021 WL 4476660, at *6 (D. Idaho Sept. 28, 2021) (finding intrusive cavity search reasonable under *Bell;* observing the risks presented by concealing drugs in this manner and reasoning that "*not* searching Jensen's vaginal area could have endangered not only the officers and other inmates, but could also have

resulted in Jensen's overdose and/or death, as the plastic bag concealed in Jensen's vagina was filled with drugs").

Plaintiff does not controvert Defendant's proffered reasons necessitating the search.[4] Nor does he dispute that the search was related to a legitimate penological need, that the bag was visibly protruding following the "squat and cough" search, or that the bag contained methamphetamine and thus constituted contraband. *See Sanchez*, 590 F.3d at 44 (manual cavity search was reasonable where, *inter alia*, the plaintiff did "not argue that the digital rectal searches were not related to a legitimate penological need").

Instead, Plaintiff argues that Defendant should have employed a less-intrusive means by allowing him to "pass the bag naturally." (DN 34, PageID.386). It has been suggested that before authorizing a "physically penetrative cavity search" of a pretrial detainee, the availability of less intrusive means for confirming the non-existence of contraband, such as requiring the detainee to have a bowel movement in an officer's presence, must be considered. *Brown v. Polk Cnty., Wis.*, 141 S. Ct. 1304, 1307 (2021) (Sotomayor, J., respecting denial of certiorari) ("[C]ourts must consider less intrusive possibilities before categorically allowing [such] warrantless searches."). As stated above, however, any physical intrusion into Plaintiff's body cavity that may have occurred was not to confirm the existence or absence of contraband, but to remove contraband already discovered pursuant to a lawful search. *See Jensen*, 2021 WL 4476660, at *6 ("The body cavity search does not appear to have been anticipated at the outset of the strip search but became necessary once Allen observed and felt the bulge in Jensen's underwear."); *Torres v. City of New York,* No. 17CV6604 (GBD) (DF), 2019 WL 7602181, at *13 (S.D.N.Y. Aug. 14, 2019), *report*

[4] Plaintiff previously argued that the visual strip search was not justified because Plaintiff had had a pat-down search and body scan which did not detect any contraband on his person. (DN 27). Citing *Florence*, the Court rejected his contention. (DN 29). To the extent Plaintiff's submissions can be read to re-assert that argument here, it remains unpersuasive for the reasons set forth in the Court's prior Memorandum Opinion and Order.

*and recommendation adopted*, 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019) (object was observed "protruding from Plaintiff's anus" and thus no reasonable jury could find that the officer-defendants lacked a legitimate justification for conducting a cavity search under *Bell* standard.).

The record thus reveals no genuine dispute that Defendant possessed a legitimate justification for performing a manual cavity search on Plaintiff.

***2. Clearly Established Law***

Assuming a reasonable juror could find that Defendant exceeded the scope of a permissible search in violation of the Fourth Amendment, the Court must still inquire whether the unlawfulness of his conduct was clearly established at the time. Taking Plaintiff's version of the facts as true and reviewing them in light of the relevant precedent, the Court cannot conclude that Defendant violated a clearly established right, and he is thus entitled to qualified immunity.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although the Supreme Court "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration in original) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Courts are cautioned "not to define clearly established law at a high level of generality[;]" instead, the "dispositive question is whether the violative nature of *particular conduct* is clearly established." *Mullenix*, 577 U.S. at 12 (citation omitted). As relevant here, "the Fourth Amendment inquiry is fact-intensive, so prior case law establishing a violation must present fairly similar facts such that a

defendant would be on notice that they are committing a constitutional violation." *Woodall v. Wayne Cnty*., 590 F. Supp. 3d 988, 1003 (E.D. Mich. 2022). Plaintiff must therefore "identify a case that found a constitutional violation based on sufficiently similar facts which, due to these factual similarities, gave the officers 'fair notice' that their [actions] [were] unconstitutional." *Paul v. Whitley Cnty. Det. Ctr*., 712 F. Supp. 3d 907, 920-21 (E.D. Ky. 2024) (quoting *Gambrel v. Knox Cnty*., 25 F.4th 391, 400 (6th Cir. 2022) (internal quotation marks omitted)).

Plaintiff has not addressed Defendant's qualified immunity argument, much less put forth any case law that would serve to put Defendant on notice that his actions violated the Fourth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (stating that a plaintiff bears the burden of overcoming qualified immunity by showing a violation of clearly established law). In any event, the Court has examined the spectrum of caselaw pertaining to physically invasive cavity searches and has not located any controlling authority, *i.e.*, Supreme Court or Sixth Circuit precedent, that prohibits corrections officials—who have a legitimate penological justification for searching a detainee for suspected contraband, who conduct the search in private and are of the same sex as the detainee—from conducting a brief manual cavity search to remove a visible bag of contraband protruding from a detainee's body.

To the extent that *United States v. Booker*, 728 F.3d 535 (6th Cir. 2013), clearly established an arrestee's right to be free from unconsented paralysis, intubation, and rectal examination to investigate for the presence of narcotics, *see id*. at 547-48; *see also Booker v. LaPaglia*, 617 F. App'x at 534-35 (positing that *Booker* clearly established "the right to be free from forced anesthetization, paralyzation, intubation, and warrantless rectal examinations"), the decision in *Booker* was explicitly limited to the specific facts of the case and did "not address cases that may be materially different," including "where other exigencies were at play." *Booker*, 728 F.3d at

547-48. Indeed, in its discussion of clearly established law, the *LaPaglia* dissent observed that in *Sanchez*, 590 F.3d at 44, which held a warrantless digital rectal examination by a doctor did not violate the Fourth Amendment, "there was no dispute about whether the purpose of the search was penological or abusive." *Id.* at 534. Likewise, there is no such dispute here.

The Sixth Circuit in *Stoudemire* held that "it was clearly established that suspicionless strip searches were permissible as a matter of constitutional law, but only so long as they were reasonable under the circumstances and performed pursuant to a legitimate penological justification." 705 F.3d at 575. *Stoudemire* thus recognized "a well established right . . . not to be subjected to a humiliating strip search in full view of several (or perhaps many) others" without justification. *Id.* Such is not the case here, where the search was conducted privately, by a single male officer, and was reasonably related to detecting and deterring contraband.

The Sixth Circuit has recently reinforced that, "[s]pecificity is especially important in the Fourth Amendment context," and that, "except in an 'obvious' case where the standard provides the answer, the plaintiff must point to pre-existing Supreme Court or Sixth Circuit precedent that would have put a reasonable officer on notice that his specific conduct was unlawful." *Mitchell v. Hamilton Cnty., Tenn.,* No. 23-5387, 2024 WL 1216403, at *4 (6th Cir. Mar. 21, 2024) (reversing district court's denial of qualified immunity and observing the absence of Supreme Court or Sixth Circuit cases that would have put defendants on notice that "reaching into" or "bump[ing]" arrestee's anal area to remove baggie of drugs from his buttocks violated the Fourth Amendment, where "deputies asserted a legitimate interest in the search incident to arrest and had probable cause to believe [the plaintiff] was still concealing evidence or contraband"); *see also Harris v. Forrester*, No. 3:18-CV-00120, 2019 WL 4918741, at *4 (E.D. Tenn. Oct. 4, 2019) (evaluating prisoner's Eighth Amendment excessive force claim alleging an unlawful penetrative cavity search

after officers observed contraband partially concealed in his buttocks and finding that, "even if the Court were to assume a constitutional violation on the facts alleged, Plaintiff has failed to demonstrate that all reasonable officers would have recognized that a body cavity search of Plaintiff, who was in a 'hot cell,' was a violation of his clearly established constitutional rights.").

The Court's review therefore reveals that the conduct upon which Plaintiff's Fourth Amendment claim rests does not violate a clearly established right. *See Boyd*, 2019 WL 2385887, at *10 ("[B]ased on existing precedent [Fourth Amendment jurisprudence on searches of detainees and inmates in detention and correctional facilities], a reasonable officer would not have known that he was violating clearly established law in conducting an anal cavity search of Plaintiff [who was arrested for a narcotics distribution offense] . . . . The search occurred when Boyd was taken into custody and was entering incarceration. It is undisputed that in the course of performing a lawful search of Boyd's person, the officer discovered contraband in between Boyd's buttocks. Boyd admits that, at the time of his arrest and subsequent search, a plastic bag containing marijuana was clenched between his buttocks. The record contains sufficient facts to support a particularized suspicion that Boyd might have been concealing drugs in his anal cavity. Based on that suspicion and the totality of the circumstances, the Court concludes that it would not be apparent to a reasonable officer confronting the situation described that proceeding to conduct a manual search of Plaintiff's anal cavity would . . . violate the Fourth Amendment prohibition on unreasonable searches.").

Because Plaintiff fails to assert that Defendant violated any clearly established constitutional right of which a reasonable official should have known, the Court finds that Defendant is entitled to qualified immunity.

## V.

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (DN 31) is **GRANTED**. The Court will enter a separate Judgment dismissing the action.

Date: August 31, 2026



Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.015